**KALIEL PLLC**
Jeffrey D. Kaliel (SBN 238293)
jkaliel@kalielpllc.com
Sophia Goren Gold (SBN 307971)
sgold@kalielpllc.com
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
Telephone:  (202) 350-4783

*Additional Counsel on signature page*

*Attorneys for Plaintiff and the putative Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANNA DORNAUS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BEST BUY CO., INC.,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# CLASS ACTION COMPLAINT

Plaintiff Deanna Dornaus, on behalf of herself and all others similarly situated, brings this class action against Defendant Best Buy. Plaintiff bases the allegations set forth herein upon personal knowledge as to her own experiences and upon information and belief as to the acts or omissions of Best Buy.

## INTRODUCTION

1.      Under the guise of "0% interest" or "no interest" promotions, and in its quest to sell big-ticket items, such as electronics or appliances, Defendant Best Buy tricks consumers into applying for, accepting, and utilizing what is, in reality, deferred-interest financing that is confusing, misleading, and deceptive, and that ultimately results in the consumer being subjected to the punitive imposition of significant and previously undisclosed retroactive interest charges.

2.      As a sophisticated retailer, Best Buy knows that "the availability of promotional financing is important to the consumer's decision to make purchases of 'big-ticket' items," and that it is "a driver of retailer selection."[1] In other words, Best Buy knows that its purported "0% interest" or "no interest" promotions "help sway consumer behavior."[2]

3.      As Plaintiff Dornaus recently learned, however, Best Buy's purported "0% interest" or "no interest" promotions are in fact nothing of the sort. Instead, they are a deferred-interest scheme, and as such, they are "'a trap for the unwary."[3] Indeed, by use of such promotions, Best Buy lures consumers, including Plaintiff, with deceptive promises of "no interest" or "0% interest" for the duration of a promotional period (e.g., 18 months), "but there is a debt time bomb at the end: Consumers who don't pay off the entire balance before the promotional period ends will be charged interest retroactively back to the date that they bought the item[.]."[4]

---

[1] Victoria Finkle, *Deferred-Interest Promotions Are Back Under Scrutiny*, New York Times (May 3, 2016); available at https://www.nytimes.com/2016/05/04/business/dealbook/deferred-interest-promotions-are-back-under-scrutiny.html
[2] *Id*.
[3] Chi Chi Wu, *Deceptive Bargain: The Hidden Time Bomb of Deferred Interest Credit Cards* (National Consumer Law Center 2015) at pg. 1.
[4] *Id*.

4.      By way of illustration, consider a consumer who buys a $2,500 computer from Best Buy on January 2, 2016 in connection with an offer touting "0% interest for 12 months." Further assume she pays off all but $100 of the total purchase price by the end of the promotional period (i.e., January 1, 2017). Despite owing only $100, she will nevertheless be charged interest on much of the $2,500, dating back a full year to January 2, 2016, the date of her initial purchase.

5.      Application of this undisclosed deferred interest results in the outstanding balance on the credit account increasing dramatically. Indeed, assuming an interest rate of 24% (which is typical for store-branded credit accounts), up to $400 in retroactive interest will be assessed and added to the consumer's balance. If she cannot pay that new balance off immediately, she then starts paying interest on top of the back interest.

6.      This is exactly what happened to Plaintiff, who fell victim to Best Buy's deception in March 2015, when she made a $1,515 supposed 0% interest purchase, only to be shocked with the imposition of a $609 lump-sum, retroactive interest charge at the end of the 18 month promotional period amount.

7.      Best Buy's promotions are "inherently unfair," as their profits depend on "trapping consumers" by "confusion," thereby "imposing a huge lump sum retroactive interest charge on those least able to handle it."[5]

8.      Specifically, Best Buy misleads and deceives consumers by using high pressure sales tactics, including: (a) aggressive salespeople, who receive additional compensation based on the number of customers they convince to sign up for Best Buy's store-branded credit accounts; (b) prominent in-store advertisements that tout "0% interest" while omitting reference to the assessment of retroactive interest back to the date of initial purchase, even on amounts already paid off; and (c) a virtually instantaneous credit application and approval process, which Best Buy designed to ensure deception by providing consumers with little or no opportunity to review and consider the true credit terms.

---

[5] *Id*. at 2.

9.      In addition to the foregoing, Best Buy knows: (a) that consumers are regularly exposed to true 0% interest promotions in the stream of commerce (which do not include retroactive assessments of interest like Best Buy's promotion); (b) that consumers do not understand that Best Buy's purported "0% interest" or "no interest" promotion is actually a deferred-interest scheme; (c) that consumers do not understand how deferred-interest works generally, or that they will be charged interest retroactive to the date of purchase on more than the balance remaining at the end of the promotional period; and (d) that consumers cannot or will not pay their balance in full by the end of the promotional period, thus becoming subject to the foregoing punitive terms requiring them to pay significant amounts of deferred or retroactive interest.

10.     In reliance on Best Buy's deceptive misrepresentations or omissions, including the fact that Best Buy omits or disguises the true terms of its so-called "0% interest" or "no interest" promotions, consumers are convinced to make purchases they otherwise would not make had they known the truth. Indeed, had Best Buy told her the truth about its so-called "0% interest" or "no interest" promotion, Plaintiff never would have made the subject purchases and/or would not have enrolled in the "0% interest or "no interest" promotion.

11.     On behalf of herself and all others similarly situated, Plaintiff brings this putative class action seeking monetary damages, restitution, declaratory relief, and injunctive relief against Defendant Best Buy for the misleading, deceptive, and ultimately false representations and omissions made with respect its so-called "0% interest" or "no interest" promotions, and the purchases made pursuant to those promotions with its store-branded credit at its retail locations.

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Best Buy.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Best Buy is subject to personal jurisdiction here, regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## THE PARTIES

14.     Plaintiff Deanna Dornaus resides in Crescent City, California and is a citizen of the State of California.

15.     At all times material herein, Defendant Best Buy was and is a nationwide retailer of appliances, electronics, and other consumer goods with its principal place of business and headquarters located in Minnesota. It regularly conducts business in California and elsewhere.

16.     Best Buy markets and sells appliances, electronics, and other consumer goods through a nationwide network of stores, including the one at which Plaintiff Dornaus shopped and made the purchases described herein.

## FACTUAL ALLEGATIONS

17.     Best Buy encourages consumers to make expensive purchases with promises of "0% interest" or "no interest," but only if those purchases are paid back in full within a specified period of time (usually 12 to 18 months)—a material term intentionally omitted by Best Buy's employees and in-store advertisements.

18.     If consumers fail to pay off their entire purchase balance by the end of the promotional period, and leave a small remaining balance, they are retroactively charged interest from the date of the initial purchase on more than that small remaining balance—another material term intentionally omitted by Best Buy.

19.     For example, if a consumer makes a $1,000 purchase from Best Buy under a 12-month "0% interest" promotion, and then pays back $900 of that purchase by the end of the 12-month period, Best Buy doesn't simply begin assessing interest on the remaining $100 balance at that point. Instead, it charges interest on a larger amount of the whole purchase price retroactive to the initial date of purchase.

20. Thus, Best Buy's purported "0% interest" or "no interest" promotion is really nothing of the sort. Under true 0% interest promotions, "consumers are not assessed interest retroactively if the promotional balance is not paid in full by the end of the promotional period."[6] Instead, following the promotional period, "the interest rate converts to the regular rate, and the interest begins to accrue only on remaining balances."[7]

21. In contrast, under Best Buy's deferred-interest scheme:

[I]nterest actually starts accruing from the date of purchase and will be added back on top of the remaining principal balance if the promotional balance is not paid in full by the deadline at the end of the promotional period. Given that the non-promotional interest rate on these offers is generally around 25%, the interest charge imposed as a lump sum on affected consumers can be substantial. Those who fail to pay off the balance in full, for example those with even a very small balance carried past the promotional expiration date, can end up owing much more interest than the remaining balance due.[8]

22. Per the Consumer Financial Protection Bureau (CFPB):

Deferred interest is a form of promotional financing typically linked to private label credit cards that consumers can use for large purchases. These offers retroactively assess and charge interest if the balance is not paid in fully by a specific date. The interest rate on these cards is often substantially higher than the rate on standard general purpose credit cards. As a result, for consumers who have available credit on a general purpose credit card and who cannot repay the entire balance during the deferred interest period, deferred interest promotions can sometimes be more expensive than revolving the same balance on their existing card.

[…]

. . . In contrast to the promotional rates found in the general-purpose credit card market – which often provide an interest-free period with no potential retroactive assessment of interest – deferred interest products can end up costing a significant segment of vulnerable consumers a sizable amount of money.[9]

23. As one of, if not the, largest retailers of consumer electronics in the United States, Best Buy knows the difference between a true "0% interest" promotion and a deferred-interest

---

[6] June 1, 2017 correspondence from CFPB Director Richard Cordray, available at https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-encourages-retail-credit-card-companies-consider-more-transparent-promotions/
[7] Id.
[8] Id.
[9] Consumer Financial Protection Bureau, *CARD Act Report: A review of the impact of the CARD Act on the consumer credit card market* (Oct. 1, 2013) at pgs. 78, 81.

promotion. Most reasonable consumers, however, do not. Indeed, per CFPB Director Richard Cordray, most consumers "do not fully understand how deferred-interest promotions operate and the manner in which interest is assessed" on purchases made in connection with such promotions,[10] including the high interest rate risk that might occur at the end of the promotional period."[11]

24.    A consumer survey conducted of 1,000 American adults during the 2017 holiday shopping season confirms the foregoing facts, noting that fully "72% of Americans considering using financing this holiday are not aware there is a costly catch to 'deferred interest' promotions on store credit cards."[12] The same survey revealed that "[o]nly 28% of consumers correctly answered a question about how interest would be charged when presented with basic "no interest if paid in full store credit card terms."[13]

25.    Best Buy knows this, and exploits it by utilizing a deferred-interest scheme that is characterized by "a lack of transparency," and that "can harm consumers."[14] Indeed, it has been described by the National Consumer Law Center as "one of the biggest abuses that remain after the passage of the Credit Card Accountability Responsibility and Disclosures (CARD) Act of 2009."[15]

---

[10] June 1, 2017 correspondence from CFPB Director Richard Cordray, available at https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-encourages-retail-credit-card-companies-consider-more-transparent-promotions/
[11] Consumer Financial Protection Bureau, *CARD Act Report: A review of the impact of the CARD Act on the consumer credit card market* (Oct. 1, 2013) at pg. 81.
[12] Kira Brecht, *72% of people considering a no interest deal for holiday shopping don't understand how deferred interest works* (Nov. 16, 2017). Available at http://www.comparecards.com/blog/survey-holiday-shoppers-dont-understand-store-card-trap/
[13] *Id.*
[14] June 1, 2017 correspondence from CFPB Director Richard Cordray, available at https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-encourages-retail-credit-card-companies-consider-more-transparent-promotions/
[15] Chi Chi Wu, *Deceptive Bargain: The Hidden Time Bomb of Deferred Interest Credit Cards* (National Consumer Law Center 2015) at pg. 2.

26.     Reasonable consumers like Plaintiff are routinely deceived by Best Buy's misleading, deceptive, unfair and unconscionable representations and omissions relative to its purported "0% interest" or "no interest" promotions.

27.     Best Buy knows that reasonable consumers do not appreciate the difference between true "0% interest" promotions and deferred-interest promotions, and it also knows that many consumers will not pay off the entire balance of their deferred-interest purchases before the end of the promotional period, thereby becoming subject to retroactive interest assessments. Indeed, according to the CFPP, "only 56.9% of consumers with [credit] scores below 660 successfully paid off their balance at the end of the promotional period,"[16] and "more than a third of people with both promotional and other types of purchases who are assessed deferred interest pay in excess of 150% of their promotional balance during that period."[17]

28.     Best Buy exploits the foregoing lack of transparency and consumers' corresponding lack of understanding by advertising and marketing its promotions using the phrases "0% interest" or "no interest" to mislead, confuse, and deceive consumers into believing they are signing up for a true "0% interest" offer, which they are not. Best Buy then rushes consumers through a virtually instantaneous credit application and approval process, which has been designed to ensure they do not discover the true terms of the promotion; i.e., that should they fail to pay off the entire balance of the purchase price by the end of the promotional period, interest will be retroactively applied on more than the balance remaining at the end of the promotional period.

29.     In its retail stores, Best Buy provides written and verbal assurances that purchases made in connection with its promotions will be subject to "NO INTEREST IF PAID IN FULL WITHIN 12 MONTHS." While some of Best Buy's in-store displays note (in smaller print) that "interest will be charged to your account from the purchase date if the purchase price is not paid in full in 12 months," they do not inform consumers that interest will be retroactively applied on

---

[16] Consumer Financial Protection Bureau, *CARD Act Report: A review of the impact of the CARD Act on the consumer credit card market* (Oct. 1, 2013) at pg. 80.
[17] June 1, 2017 correspondence from CFPB Director Richard Cordray, *supra*, note 14.

more than the balance remaining at the end of the promotional period. By reason of the foregoing representations or omissions, Best Buy's disclosures are incomplete, confusing, misleading, deceptive, and ultimately false. Indeed, the most reasonable way to read Best Buy's fine print disclosure (which itself conflicts with the prominent "no interest" disclosure) is that interest is not imposed during the promotional period, and that upon the expiration thereof, it is retroactively imposed only on the remaining unpaid balance. For example, if a consumer makes a $1,000 purchase and pays off $800, that the accrued deferred interest would apply only for the remaining $200.

30.     Having piqued consumers' interest with displays prominently touting "0% interest" or "no interest," Best Buy then subjects consumers to sales associates who, upon information and belief, receive additional compensation for convincing them to sign up for its promotional credit offers, and who thus pressure them to do so. Best Buy associates do not inform consumers they are signing up for a deferred-interest promotion – as opposed to the true "0% interest" promotion Best Buy has promised – and they rush consumers through an application process that takes mere minutes and is designed to ensure they have no meaningful opportunity to review or understand the written terms of the promotion, which likewise fail to inform consumers that interest will be retroactively applied on more than the balance remaining at the end of the promotional period if the balance is not paid off before the end of the promotional period.

31.     The applications are almost always instantly approved, whereupon purchases are immediately added to the balance of the newly-opened account. Best Buy designed this simultaneous application/approval/purchase sequence to ensure that consumers rely on its misleading promises of "0% interest" or "no interest," and to further ensure that they have no meaningful opportunity to review or understand the terms of the credit for which they are signing up.

**PLAINTIFF'S DISCOVERY OF BEST BUY'S SCHEME**

32.     Plaintiff first heard about Best Buy's purported "0% interest" promotion from a Best Buy sales person when she was shopping at a Best Buy store in California on March 16, 2015.

33.     The Best Buy salesperson informed Plaintiff that if she qualified, she would receive 18 months with no interest on her purchase.  She believed this was true. The Best Buy salesperson never informed Plaintiff that if she failed to pay off the entire balance of the account before the end of the 18 month promotional period she would: (a) be required to pay interest retroactive to the initial date of purchase; and (b) that retroactive interest would be assessed on more than the balance outstanding at the end of the promotional period.

34.     On that same visit, at the urging of the Best Buy salesperson, and in reliance on Best Buy's representation that she would be charged no interest on her purchase for a period of 18 months, Plaintiff applied for the store branded-offered credit.

35.     The application process took approximately 5 minutes, and Plaintiff's application was approved within seconds, whereupon she made a purchase in the amount of $1,515.

36.     At no time prior to the sale being finalized and the purchase being price added to her newly-opened account did the Best Buy salesperson: (a) explain the difference between a true "0% interest" or "no interest" promotion and a deferred-interest promotion; (b) inform Plaintiff that Best Buy's promotion was not a true "0% interest" or "no interest" promotion; (c) inform Plaintiff she would be required to pay interest retroactive to the initial date of purchase; and d) inform Plaintiff that retroactive interest would be assessed on more than the balance outstanding at the end of the promotional period.

37.     Had Best Buy informed her about the true nature of its purported "0% interest" or "no interest" promotion, Plaintiff would not have made the subject purchase and/or would not have enrolled in the "0% interest" promotion.

38.     Despite making timely payments and paying off a significant portion of the initial purchase price during the promotional period, Plaintiff was unable to pay off the entire balance, and was hit with $606 dollars in retroactive interest when it expired.

**CLASS ALLEGATIONS**

39.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

40.     The proposed Class is defined as:

> All persons in the State of California who, within the applicable statute of limitations preceding the filing of this action through class certification, made purchases on store-issued credit and were later charged retroactive, lump-sum interest on an amount greater than the balance remaining at the end of the promotional period.

41.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

42.     Excluded from the Class are Best Buy, its parents, subsidiaries, affiliates, officers and directors, any entity in which Best Buy has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

43.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

44.     <u>Numerosity; Rule 23(a)(1)</u>: The members of the Class are so numerous that joinder is impractical. The Class consist of many thousands of members, the identities of whom are within the knowledge of and can be ascertained only by resort to Best Buy's records.

45.     The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class members, received store credit and has been damaged by Best Buy's misconduct in that they have been harmed by the same deceptive, misleading, and/or fraudulent representations, omissions, pretenses, and practices. Furthermore, the factual basis of Best Buy's misconduct is common to all Class members, and represents a

common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

46.   Predominance; Rule 23(a)(2): There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

47.   Among the questions of law and fact common to the Class are whether Best Buy:

a.   Unlawfully, falsely, deceptively, or misleadingly represented that purchases would be under a 0% interest promotion, when that was not actually the case;

b.   Unlawfully, falsely, deceptively, or misleadingly induced Class members into making purchases on store credit based on misrepresentations, omissions, or false promises;

c.   Wrongfully omitted that the 0% promotion would result in the assessment of significant amounts of retroactive interest;

d.   To the extent applicable, whether and how long Best Buy fraudulently concealed its past and ongoing wrongful conduct from Plaintiff and other members of the Class;

e.   Was unjustly enriched through its conduct; and

f.   Violated consumer protection and other state laws.

48.   Other questions of law and fact common to the Class include:

a.   The proper method or methods by which to measure damages; and

b.   The declaratory and injunctive relief to which the Class are entitled.

49.   Typicality; Rule 23(a)(3): Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful conduct and the same or substantially similar unconscionable conduct by Best Buy. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

50.   There are no defenses available to Defendant that are unique to Plaintiff.

51.    <u>Adequacy of Representation; Rule 23(a)(4)</u>: Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions generally, and, in particular, class actions on behalf of consumers. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

52.    <u>Injunctive or Declaratory Relief; Rule 23(b)(2)</u>: The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

53.    <u>Superiority; Rule 23(b)(3)</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Best Buy, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Best Buy's misconduct will proceed without remedy.

54.    Even if Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Fraud and Fraudulent Inducement**
**(On Behalf of the Class)**

55.    Plaintiff repeats the preceding paragraphs as if set forth fully herein.

56.     Best Buy affirmatively misrepresented and/or did not disclose sufficient facts to render non-misleading its statements about the "0% interest" or "no interest" promotion offered in connection with its promotion of its store credit. These misrepresentations or omissions include, *inter alia*, that its purported "0% interest" or "no interest" promotion was in fact a deferred-interest scheme, that the purported "0% interest" or "no interest" promotion would result in retroactive interest fees being assessed against the consumer.

57.     Best Buy knew, or reasonably should have known, that its representations alleged herein were materially false or misleading, or that omission of material facts rendered such representations false or misleading. Best Buy also knew, or had reason to know, that its misrepresentations and omissions would induce Plaintiff and the Class members to use store credit to make purchases they otherwise would not make.

58.     Best Buy's misrepresentations or omissions were material and were a substantial factor in Plaintiff and the Class members' using store credit to make purchases they otherwise would not make.

59.     Best Buy intended its misrepresentations or omissions to induce Plaintiff and the Class members to use store credit to make purchases they otherwise would not, or had reckless disregard for same.

60.     But for these misrepresentations or omissions, Plaintiff and the Class members would not have used store credit to make purchases they otherwise would not make.

61.     Plaintiff and the Class members were justified in relying on Best Buy's misrepresentations or omissions. The same or substantively identical misrepresentations were communicated, and/or the same or substantively identical omissions were not communicated, to each Class member, including through promotional materials prepared and disseminated by Best Buy.

62.     Plaintiff and Class members were damaged as a direct and proximate result of Best Buy's misrepresentations or omissions alleged herein.

## SECOND CLAIM FOR RELIEF

## Negligent Misrepresentation or Omission
### (On Behalf of the Class)

63.     Plaintiff repeats the preceding paragraphs as if set forth fully herein.

64.     Best Buy had or undertook a duty to accurately and truthfully represent to consumers the truth regarding Best Buy's statements about its purported "0% interest" or "no interest" promotions.

65.     Best Buy failed to exercise ordinary care in making representations concerning its "0% interest" or "no interest" promotions.

66.     Best Buy negligently misrepresented or omitted the true facts of its "0% interest" or "no interest" promotions.

67.     Best Buy's statements were false at the time the misrepresentations were made, or the omissions were not made.

68.     Best Buy knew, or reasonably should have known, that its representations alleged herein were materially false or misleading, or that its omission of material facts rendered such representations false or misleading. Best Buy also knew, or had reason to know, that its misrepresentations and omissions would induce Class members to use store credit to make purchases they otherwise would not make.

69.     As a direct and proximate result of Best Buy's acts and omissions described herein, Plaintiff and the Class members have suffered harm, and will continue to do so.

70.     Best Buy's misrepresentations or omissions were material and were a substantial factor in Plaintiff and the Class members using store credit to make purchases they otherwise would not make.

71.     Best Buy induced Plaintiff and the Class members to use store credit to make purchases they otherwise would not make, or had reckless disregard for same.

72.     But for these misrepresentations or omissions, Plaintiff and the Class members would not have used store credit to make purchases they otherwise would not make.

73.     Plaintiff and the Class members were justified in relying on Best Buy's misrepresentations and omissions. The same or substantively identical misrepresentations were communicated, and/or the same or substantively identical omissions were not communicated, to each Class member, including through promotional materials prepared and disseminated by Best Buy.

74.     Plaintiff and Class members were damaged as a direct and proximate result of Best Buy's misrepresentations or omissions alleged herein.

### THIRD CLAIM FOR RELIEF
### Consumers Legal Remedies Act (CLRA) Cal. Civ. Code § 1750 *et seq.*
### (On Behalf of the Class)

75.     Plaintiff repeats the preceding paragraphs as if set forth fully herein.

76.     Plaintiff and each of the Class members are "consumers" within the meaning of Civil Code § 1761(d).

77.     Plaintiff and Class members made "transactions" with Defendant within the meaning of Civil Code § 1761(e).

78.     Plaintiff and the Class purchased "goods" from Defendant within the meaning of §§ 1761(a).

79.     Defendant's actions, representations, and conduct have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods or services to any consumer.

80.     Specifically, Best Buy's conduct in making confusing, misleading, deceptive or false representations or omissions with respect to its purported "0% interest" or "no interest" promotions, as set forth at length in the preceding paragraphs, constitutes the use of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce in violation of the CLRA.

81.     As detailed at length in the preceding paragraphs, Plaintiff and members of the Class relied, or may be presumed to have relied, upon Best Buy's representations or omissions with respect to its purported "0% interest" or "no interest" promotions.

82.     As set forth at length in the preceding paragraphs, Best Buy intended that Plaintiff and the members of the Class would rely on its representations or omissions with respect to its purported "0% interest" or "no interest" promotions.

83.     Plaintiff and members of the Class were entitled to know that Best Buy's purported "0% interest" or "no interest" promotion was a sham.

84.     Had Best Buy told the truth about its so-called "0% interest" or "no interest" promotion, Plaintiff and the members of the Class never would have made the purchases they made in connection with those promotions and/or would not have enrolled in the "0% interest" promotion.

85.     Plaintiff and members of the Class have been injured and have suffered loss of money or property as a direct and proximate result of Best Buy's utilization of unfair, unconscionable, or deceptive methods, acts, or practices in violation of the CLRA as detailed at length in the preceding paragraphs.

86.     Plaintiff and the Class seek declaratory relief, injunctive relief, and other relief allowable under Bus. & Prof. Code § 17203, including but not limited to enjoining Defendant from continuing to engage in the unfair, unlawful, and fraudulent conduct alleged herein.

87.     Pursuant to Section 1782(d) of the CLRA, Plaintiff reserves the right to amend this Complaint to include a request for damages under the CLRA pursuant to Section 1782(a) of the CLRA within thirty (30) days of providing the required notice.

88.     Plaintiff's affidavit stating facts showing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(c) is attached hereto.

**FOURTH CLAIM FOR RELIEF**
**Violation of California Unfair Competition Law**
**Business and Professions Code § 17200**
**(On Behalf of the Class)**

89.     Plaintiff repeats the preceding paragraphs as if set forth fully herein.

90.     Defendant's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, *et seq*.

91.     The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.  In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

92.     By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable,  and sweeps within its scope acts and practices not specifically proscribed by any other law.

93.     As further explained herein, Defendant's conduct violates the UCL's "unfair" prong insofar as Defendant charges undisclosed retroactive interest.

94.     Defendant's conduct was not motivated by any business or economic need or rationale.  The harm and adverse impact of Defendant's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives.

95.     The harm to Plaintiff and Class Members arising from Defendant's unfair practices relating to the imposition of the improper fees outweighs the utility, if any, of those practices.

96.     Defendant's unfair business practices as alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiff and members of the Class.

97.     Defendant's conduct was substantially injurious to consumers in that they have been forced to pay improper, abusive, and/or unconscionable interest payments.

98.     Moreover, Defendant committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when it affirmatively and knowingly

misrepresented its "0% interest" and "No interest" promotions, and failed to disclose the potential for retroactive interest.

99.     Plaintiff relied on Defendant's misrepresentations and omissions. Had Best Buy told the truth about its so-called "0% interest" or "no interest" promotion, Plaintiff and the members of the Class never would have made the purchases they made in connection with those promotions and/or would not have enrolled in the "0% interest" promotion.

100.     Moreover, Defendant committed unlawful business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, when it violated the CLRA, as alleged herein.

101.     As a result of Defendant's violations of the UCL, Plaintiff and members of the Class have have suffered and will continue to suffer actual damages in the form of retroactive interest.

### FIFTH CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of the Class)

102.     Plaintiff repeats the preceding paragraphs as if set forth fully herein.

103.     By means of Best Buy's wrongful conduct as detailed at length in the preceding paragraphs, Best Buy knowingly induced Plaintiff and members of the Class to apply for and use its purported "0% interest" or "no interest" credit offer by fraudulent, unfair, deceptive, unconscionable, and/or oppressive means.

104.     Best Buy knowingly and wrongfully received and retained benefits from Plaintiff and members of the Class. In so doing, Best Buy acted intentionally or with conscious disregard for the rights of Plaintiff and members of the Class.

105.     As a direct and proximate result of Best Buy's wrongful conduct as detailed at length in the preceding paragraphs, Best Buy has been unjustly enriched at the expense, and to the detriment, of Plaintiff and members of the Class.

106.     Best Buy's unjust enrichment is traceable to, and resulted directly and proximately from, its wrongful conduct detailed at length in the preceding paragraphs.

107.   It is unfair and inequitable for Best Buy to be permitted to retain the benefits it received, and is still receiving, without justification, from the wrongful conduct alleged herein. Best Buy's retention of such benefits under the circumstances is inequitable.

108.   The financial benefits derived by Best Buy rightfully belong to Plaintiff and members of the Class, in whole or in part. Best Buy should be compelled to account for and disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received from them. A constructive trust should be imposed upon all wrongful or inequitable sums received by Best Buy traceable to Plaintiff and the members of the Class.

109.   Plaintiff and members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

1.   Declaring Best Buy's conduct alleged herein to be fraudulent, deceptive, wrongful, unfair, inequitable, and unconscionable;

2.   Restitution owing to Plaintiff and the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

3.   An accounting and disgorgement of the ill-gotten gains derived by Best Buy's misconduct;

4.   Actual damages in an amount according to proof;

5.   An injunction enjoining Best Buy from engaging in the same wrongful conduct going forward including requiring Best Buy to adequately disclose facts to render truthful its representations;

6.   Punitive and exemplary damages;

7.   Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

8.      Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees; and

9.      Such other relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: July 9, 2018                          Respectfully submitted,

**KALIEL PLLC**
By: /s/ Jeffrey Kaliel
Jeffrey Kaliel (CA Bar No. 238293)
jkaliel@kalielpllc.com
Sophia Goren Gold (CA Bar No. 307971)
sgold@kalielpllc.com
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
Telephone: (202) 450-4783


**HALUNEN LAW**
Melissa S. Weiner (*pro hac vice* to be filed)
weiner@halunenlaw.com
Christopher J. Moreland (*pro hac vice* to be filed)
moreland@halunenlaw.com
1650 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098


**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
Jeff Ostrow (*pro hac vice* to be filed)
ostrow@kolawyers.com
Scott Edelsberg (*pro hac vice* to be filed)
edelsberg@kolawyers.com
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100

Attorneys for Plaintiff and the putative class