UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEANNA DORNAUS,
    Plaintiff,

v.

BEST BUY CO., INC., et al.,
    Defendants.

Case No. 18-cv-04085-PJH

**ORDER COMPELLING ARBITRATION AND STAYING ACTION**

Re: Dkt. No. 42

Best Buy Co., Inc.'s and Best Buy Stores L.P.'s (together, "Best Buy") motion to compel arbitration and stay the action came on for hearing before this court on January 9, 2019. Plaintiff appeared through her counsel, Sophia Gold. Defendants appeared through their counsel, Jonathan Bye. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

**A. Factual Background**

On July 9, 2018, plaintiff Deanna Dornaus, a California resident, filed a class action complaint against Best Buy. Dkt. 1. She amended the complaint on November 14, 2018. FAC, Dkt. 40. That operative complaint states five claims: (1) fraud and fraudulent inducement; (2) negligent misrepresentation or omission; (3) Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; (4) California Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200; and (5) unjust enrichment. In her prayer for relief, plaintiff seeks "[a]n order on behalf of the general public enjoining Best Buy from

continuing to misrepresent and omit material facts . . . and requiring Best Buy to adequately disclose facts to render truthful its advertisements and representations[.]" Id. at 22 ¶ 5.

The complaint alleges that on March 16, 2015, a Best Buy salesperson at a California Best Buy store urged her to sign up for Best Buy's so-called "0% interest" promotion. Id. ¶¶ 33–35. She believed that, by signing up for a Best Buy credit card, her purchase would not accrue interest during an 18-month promotional period, but in reality her purchase accrued retroactive interest. Id. ¶¶ 22, 33–39. Plaintiff alleges that Best Buy engages in the same deceptive conduct throughout the State of California, and she asserts claims on behalf of a putative class of "[a]ll persons in the State of California who, within the applicable statute of limitations preceding the filing of this action through class certification, made purchases on store-issued credit and were later charged retroactive, lump-sum interest on an amount greater than the balance remaining at the end of the promotional period." Id. ¶ 42.

The parties had entered into an arbitration agreement (the "Agreement"), which neither party disputes. Opp. at 1 n.1; Motgomery Decl., Dkt. 42-1 ¶ 8 & Ex. 3 (Exhibit 3 is the "Agreement"). Defendant now moves to compel arbitration. Dkt. 42.

**B.     The Agreement**

The Agreement's arbitration provision includes the following relevant language:

> THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.
>
> **Covered claims**
>
> - You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").
> - If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.

2

> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek[.]
>
> . . . .
>
> **Arbitration limits**
>
> - Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court.
> - We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. . . .
> - Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action. Claims of 2 or more persons may not be combined in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.
>
> . . . .
>
> **Survival and Severability of Terms**
>
> This arbitration provision shall survive changes in this Agreement and termination of the account or the relationship between you and us, including the bankruptcy of any party and any sale of your account, or amounts owed on your account, to another person or entity. If any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, except that there can be no arbitration of a class or representative Claim. This arbitration provision may not be amended, severed or waived, except as provided in this Agreement or in a written agreement between you and us.

Agreement at 6–7.

**DISCUSSION**

**A.     Legal Standard**

"The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 236 (2012).

The "first principle" that underscores the U.S. Supreme Court's arbitration decisions is that "[a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." Granite Rock Co. v. Int'l B'hd of Teamsters, 561 U.S. 287, 299 (2010) (quotations and citations omitted); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Thus, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute.*" Granite Rock, 561 U.S. at 297.

Under the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. ("FAA"), any party bound to an arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3–4; see also Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004); Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001) (FAA applies to arbitration agreements in any contract affecting interstate commerce). The FAA requires the court to compel arbitration of issues covered by the arbitration agreement. Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 218 (1985). In ruling on a motion to compel arbitration under the FAA, the district court's role is typically limited to determining whether (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable. Lifescan., 363 F.3d at 1012; Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If the answers are yes, the court must enforce the agreement. Lifescan, 363 F.3d at 1012.

4

The FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, state contract defenses may be applied to invalidate arbitration clauses if those defenses apply to contracts generally. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996); see also Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68 (2010).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). Nevertheless, a motion to compel arbitration should be denied if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 650 (1986).

**B.  Analysis**

The court assess three issues when determining whether to compel arbitration: whether (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable. Lifescan., 363 F.3d at 1012. The parties agree that the first two issues support arbitration. The parties dispute whether the Agreement is valid and enforceable.

Plaintiff argues that the Agreement violates California contract law—as expressed in McGill v. Citibank, N.A., 2 Cal. 5th 945 (2017)—by preventing any award of public injunctive relief, while defendant argues that this court should decline to follow McGill because the FAA preempts its holding. The court considers McGill's effect on the terms of the Agreement.

**1.  Whether the Agreement Precludes Public Injunctive Relief in Violation of McGill**

State contract defenses may invalidate arbitration clauses if those defenses apply to contracts generally. Doctor's Assocs., Inc., 517 U.S. at 687. Contracts that prevent all adjudication of public injunctive relief—in any forum—are impermissible under California

5

law. McGill, 2 Cal. 5th at 961 ("insofar as the arbitration provision here purports to waive McGill's right to request in any forum such public injunctive relief, it is invalid and unenforceable under California law"). That includes contracts that compel all claims to arbitration, yet allow only pursuit of individual relief (solely on behalf of oneself) in that forum. See id.; Blair v. Rent-A-Ctr., Inc., Case No. 17-cv-02335-WHA, 2017 WL 4805577, at *5 (N.D. Cal. Oct. 25, 2017) ("the arbitrator was prohibited from 'award[ing] relief that would affect RAC account holders other than [the customer]'"); Roberts v. AT&T Mobility LLC, Case No. 15-cv-03418-EMC, 2018 WL 1317346, at *4 (N.D. Cal. Mar. 14, 2018) (arbitrator was prohibited from awarding relief for or against anyone who was not a party to arbitration); McArdle v. AT&T Mobility LLC, Case No. 09-cv-01117-CW, 2017 WL 4354998, at *1 (N.D. Cal. Oct. 2, 2017) ("The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim."). However, a contract compelling arbitration of a claim seeking a remedy of public injunctive relief that allows the arbitrator to award such relief is valid and enforceable under McGill.

The court first assesses whether the Agreement prohibits adjudicating claims seeking public injunctive relief in any forum. If it does, the offending provision is invalid and unenforceable under California law.

The Agreement provides, in relevant part:

- You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").
- If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek[.]

. . . .

6

- Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. **The arbitrator** has no authority to arbitrate any claim on a class or representative basis and **may award relief only on an individual basis.** If arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action.

Agreement at 6–7 (emphasis added).

The first two bulleted paragraphs quoted above provide that if either party elects arbitration of a claim (even a claim seeking public injunctive relief), it must be arbitrated and cannot be litigated in court. The final bulleted paragraph quoted above provides that, if a party elects arbitration, the arbitrator can award relief only on an individual basis. That provision precludes the arbitrator from awarding public injunctive relief, which is relief intended to benefit those other than the individual bringing the claim. See Blair, 2017 WL 4805577, at *5; Roberts, 2018 WL 1317346, at *4; McArdle, 2017 WL 4354998, at *1; cf. Magana v. DoorDash, Inc., No. 18-cv-03395-PJH, 2018 WL 5291988, at *7 (N.D. Cal. Oct. 22, 2018) (the agreement prohibited class actions, but not claims seeking public injunctive relief, and allowed the arbitrator to award "all remedies . . . which would otherwise be available in a court of law").

As such, the Agreement allows a party to prevent adjudication of public injunctive relief in any forum by electing arbitration, which McGill does not permit.

### 2. Whether the FAA Preempts McGill

Defendant argues that the court should decline to follow McGill because it is preempted by the FAA. The FAA "preempts state law to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Sakkab v. Luxottica Retail N. Am., Inc., 803 F.3d 425, 432 (9th Cir. 2015) (internal quotation marks and citations omitted). First, "[t]he final clause of [9 U.S.C.] § 2, its saving clause, permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an

7

agreement to arbitrate is at issue." Id. (internal quotation marks omitted). Second, "[e]ven if a state-law rule is 'generally applicable,' it is preempted if it conflicts with the FAA's objectives." Id. (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 343 (2011)).

First, to fall within the ambit of § 2's saving clause, the McGill rule must be a generally-applicable contract defense rather than a defense that applies only to arbitration. 9 U.S.C. § 2; Sakkab, 803 F.3d at 432. The California Supreme Court has unequivocally stated that the prohibition of a public injunctive relief award in any forum "is a ground under California law for revoking any contract." McGill, 2 Cal. 5th at 962 ("The contract defense at issue here—'a law established for a public reason cannot be contravened by a private agreement' (Civ. Code, § 3513)—*is* a generally applicable contract defense, i.e., it is a ground under California law for revoking any contract."). Therefore, the McGill rule is a generally-applicable contract defense. See generally McArdle, 2017 WL 4354998, at *4 ("The McGill rule is a generally-applicable contract defense. . . . [T]he parties are free to contract for any procedures they choose for arbitrating, or litigating, public injunctive relief claims."); Roberts, 2018 WL 1317346, at *6 (N.D. Cal. Mar. 14, 2018).

Second, the court assesses whether the McGill rule conflicts with the FAA's objectives, applying "ordinary conflict preemption principles to determine whether a state-law rule conflicts with a federal statute containing a saving clause." Sakkab, 803 F.3d at 433. "In determining whether a state law is impliedly preempted, 'the purpose of Congress is the ultimate touchstone.'" Id. (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)).

"The Supreme Court has stated that Congress enacted the FAA to 'overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'" Id. at 434 (quoting Granite Rock, 561 U.S. at 302). "The FAA therefore preempts state laws prohibiting the arbitration of specific types of claims." Id. The California Supreme Court's decision in McGill

8

expresses no preference regarding whether claims seeking public injunctive relief are litigated or arbitrated. The McGill rule does not prohibit the arbitration of any type of claim or relief—it provides only that the ability to seek public injunctive relief may not be waived outright.

"Concepcion requires us to examine whether the waived claims mandate procedures that interfere with arbitration[.]" Sakkab, 803 F.3d at 436–37. The Sakkab court found that arbitrations under the California Private Attorneys General Act ("PAGA") do not have onerous procedures that would interfere with arbitration. Id. at 436. The Ninth Circuit distinguished PAGA claims from class action claims. PAGA claims do not provide a right for others to join the action, so there "is no need to protect absent employees' due process rights in PAGA arbitrations." Id. Instead, PAGA claims primarily carry a potential remedy that reflects vindication of claims on behalf of the state. So, an agreement to waive PAGA claims "is effectively an agreement to limit the penalties an employee-plaintiff may recover on behalf of the state." Id.

The adjudication of claims seeking public injunctive relief mirrors the Sakkab court's analysis of PAGA claims. Claims seeking public injunctive relief do not necessarily require the procedural complexities of class claims—there is no notice to the public, no opportunity for others to join, and no concern for others' due process rights. Instead, like PAGA claims, claims seeking public injunctive relief are claims for which an enhanced remedy may be available. E.g., Roberts, 2018 WL 1317346, at *7 ("The issues of class notice and multi-faceted elements which inform class certification particularly under Rule 23(b)(3) do not obtain where a public injunction is sought under 17200."). Unlike the issue the Supreme Court faced in Concepcion, there are no concerns here about forcing the procedures of class actions onto arbitration. See Sakkab, 803 F.3d at 436–37 (in the context of PAGA); see also Roberts, 2018 WL 1317346, at *6 ("If the California state law rule (Iskanian) prohibiting waiver of representative PAGA claims (in any forum) does not interfere with the fundamental attributes of arbitration, then it is difficult to see how the California state law rule (McGill) prohibiting waiver of public

9

injunctive relief (in any forum) could.").[1]

### 3. Whether the Public Injunctive Relief Bar is Severable

Given that the Agreement contains invalid terms under McGill, the court turns to their effect on the enforceability of the Agreement. "The procedure to be followed here is dictated . . . by the specific procedures contracted to by the parties in the arbitration agreement at issue here." McArdle, 2017 WL 4354998, at *4.

In a section titled "Survival and Severability of Terms," the Agreement provides in part:

> If any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, except that there can be no arbitration of a class or representative Claim. This arbitration provision may not be amended, severed or waived, except as provided in this Agreement or in a written agreement between you and us.

Agreement at 7.

Contrary to plaintiff's arguments, the agreement plainly does not contain a "poison pill" provision invalidating the entire arbitration provision. Rather, as quoted above, "[i]f any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force[.]" Id. Here, there are two terms that together create an unenforceable result. The first is that the arbitrator can grant only individual relief. The second is that any party can elect to arbitrate any dispute, thereby eliminating the right to seek a remedy in court. Relaxing either could bring the Agreement in line with McGill's requirements.[2]

---

[1] Defendant also argues that McGill conflicts "directly" with Supreme Court and Ninth Circuit precedent upholding the "effective vindication" exception. Mot. at 19–20; Reply at 4–5. The court is perplexed by the argument, because "effective vindication" is irrelevant to the issues presented by this motion. That exception applies to federal claims, and neither plaintiff, Sakkab, nor McGill relies on it. Moreover, the Ninth Circuit has directly rejected the argument in an analogous context. Sakkab, 803 F.3d at 433 n.9 ("The 'effective vindication' exception, which permits the invalidation of an arbitration agreement when arbitration would prevent the 'effective vindication' of a federal statute, does not extend to state statutes.") (quoting Ferguson v. Corinthian Colls., Inc., 733 F.3d 928, 936 (9th Cir. 2013)). Contrary to defendant's argument, generally-applicable state-law contract defenses can invalidate arbitration agreements.

[2] Plaintiff argues that the contract's saving clause, which provides "there can be no

10

Both parties have argued that, if the Agreement is unenforceable as written under McGill, that at least "the claim for public injunctive relief would remain with the Court to resolve[.]" Reply at 6; see also Opp. at 12 (arguing that the entire action should remain with this court). The court agrees. While the remainder of plaintiff's action must be compelled to arbitration under the terms of the Agreement—including all questions of liability—the court shall retain jurisdiction over the adjudication of plaintiff's request for public injunctive relief, should defendant be found liable for the California statutory claims, which are brought on behalf of the public and for which public injunctive relief may be available.

Given that all issues other than the potential award of public injunctive relief are subject to arbitration and will predominate over the relatively narrow issues concerning the propriety and scope of a public injunctive relief award, this action is STAYED in its entirety until such arbitration has been had in accordance with the terms of the agreement. See 9 U.S.C. § 3.

Given the above analysis, the court need not reach defendant's arguments concerning the propriety or merits of plaintiff's request for public injunctive relief at this time. This order shall not prevent defendant from raising those arguments before this court again when litigating the remedy of public injunctive relief following arbitration.

**CONCLUSION**

For the foregoing reasons, plaintiff is COMPELLED TO ARBITRATE HER CLAIMS AGAINST BEST BUY in accordance with this order. The decision of whether to award the remedy of public injunctive relief IS NOT COMPELLED TO ARBITRATION, and this

---

arbitration of a class or representative Claim," means there can be no arbitration of a claim seeking public injunctive relief. Not so. An individual claim seeking a public injunctive relief remedy is not a class or representative claim. McGill, 2 Cal. 5th at 959–61 (explaining that an action seeking public injunctive relief is not a "representative action"); see also Magana, 2018 WL 5291988, at *7 ("a claim for public injunctive relief is not a class, collective, or representative action"); Lee v. Postmates Inc., No. 18-cv-03421-JCS, 2018 WL 4961802, at *9 (N.D. Cal. Oct. 15, 2018) ("a request for public injunctive relief does not require a claim to be brought as a class or representative action, but is instead a remedy available to an individual private plaintiff").

11

court retains jurisdiction over that dispute, which will be resolved, if necessary, after liability is determined.  The entire action is hereby STAYED until such arbitration has been had in accordance with the terms of the Agreement.

**IT IS SO ORDERED.**

Dated:  February 14, 2019

_____
PHYLLIS J. HAMILTON
United States District Judge